```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

**JEFFERY A. JOHNSON,**

    **Plaintiff,**

    **vs.**                                      **Civil Action 2:13-cv-0025**
                                                          **Judge Watson**
                                                          **Magistrate Judge King**

**MUSKINGUM CO. SHERIFF'S DEPT.,**
*et al.,*

    **Defendants.**

## REPORT AND RECOMMENDATION

Plaintiff Jeffery A. Johnson, an inmate currently incarcerated in the Franklin Medical Center ("FMC"),[1] brings this action under 42 U.S.C. § 1983 against the Muskingum County Sheriff's Department, Muskingum County Sheriff Matthew Lutz, several Sheriff's deputies, the "Sheriff's Department Food Personal" [sic] (collectively, "Muskingum County Defendants"), Nurse Shane Love and Dr. Anthony Khoury (collectively, "the Medical Defendants"), alleging civil rights violations "under the Fifth, Eighth, and Fourteenth Amendment[s]" to the United States Constitution for "refusing [plaintiff] medical care." *Amended Complaint*, Doc. No. 32, p. 5.[2] This matter is now before the Court on the *Motion for Summary Judgment of Defendants Shane Love, L.P.N. and Anthony Khoury, D.O.*, Doc. No. 66 ("*Motion for Summary Judgment*"). For the reasons that follow, it is **RECOMMENDED**

---

[1] Plaintiff was formerly incarcerated at Noble Correctional Institution. *Order*, Doc. No. 55; *Order*, Doc. No. 59.
[2] The Court previously dismissed other claims and parties. *See Order*, Doc. No. 64; *Order*, Doc. No. 74.

that the *Motion for Summary Judgment* be **GRANTED**.

**I.    BACKGROUND**

Plaintiff was booked into the Muskingum County Jail on March 1, 2012. *Deposition of Jeffrey Johnson*, pp. 7, 9, attached as *Exhibit A* to the *Motion for Summary Judgment* ("*Johnson Depo.*"). On March 9, 2012, while he was detained in that jail, plaintiff ate an apple crisp. *Id*. at 15-16. While eating this dessert, plaintiff began to choke. *Id*. at 15-17. He stood up, staggered forward and hit his head on jail bars, knocking him unconscious. *Id*.

When plaintiff regained consciousness after some undefined period, he noticed that there was vomit next to him and that defendant Deputy Dale Fuller and other people were present. *Id*. at 16-19, 22. Defendant Fuller asked plaintiff if he was alright, someone else took pictures while another person collected parts of the apple core and stem from the vomit. *Id*. at 15-19, 23-24.

At 12:10 p.m., defendant Love was called to the fourth floor and examined plaintiff who was found lying face down on the floor. *Affidavit of Shane Love, L.P.N.*, ¶ 8, 10 attached as *Exhibit B* to *Motion for Summary Judgment* ("*Love Affidavit*"); *Exhibit 1*, p. 2, attached to *Love Affidavit* (notes made contemporaneously with defendant Love's examination of plaintiff). Plaintiff told defendant Love that he was "OK." *Love Affidavit*, ¶ 11; *Exhibit 2*, attached thereto. Defendant Love checked plaintiff's vitals, which were all within normal limits. *Love Affidavit*, ¶ 12; *Exhibit 2*, attached thereto. Defendant Love's progress notes taken contemporaneously with

2

the examination of plaintiff reflect that there were no signs or symptoms of injuries. *Love Affidavit*, ¶¶ 6-8, 13; *Exhibit 2*, attached thereto. Defendant Love instructed the second shift nurse to check on plaintiff. *Love Affidavit*, ¶ 14. The second shift nurse recorded normal vital signs and the accompanying progress note reflects that plaintiff voiced no complaints. *Love Affidavit*, ¶ 14; *Exhibit 2*, attached thereto.

On March 15, 2012, plaintiff completed a "Request for Medical Treatment" form, which is required of all inmates at the Muskingum County Jail who seek medical attention. *Love Affidavit*, ¶ 4; *Exhibit 3*, attached thereto. In response to that request, defendant Love examined plaintiff on March 16, 2012. *Love Affidavit*, ¶ 5. Defendant Love's notes reflect that plaintiff reported that his throat was still a little sore from choking the previous week and that plaintiff has a small amount of blood when he gargles with salt water. *Love Affidavit*, ¶¶ 17-18; *Exhibits 2* and *3*, attached thereto. Defendant Love, however, noted that upon examination that he was unable to see any lesions or areas from which blood could be coming. *Love Affidavit*, ¶ 20; *Exhibit 3*, attached thereto. Although plaintiff experienced some pain when swallowing and at his Adam's apple, plaintiff nevertheless stated that his throat was getting better. *Love Affidavit*, ¶ 17; *Exhibit 2*, attached thereto. For example, eating soft food did not bother plaintiff. *Exhibit 3*, attached to *Love Affidavit*. Every time he examined plaintiff, defendant Love discussed his findings with defendant Khoury. *Love Affidavit*, ¶ 21; *Exhibits 2* and *3*, attached thereto. After each of these updates from

3

defendant Love, defendant Khoury "assessed all of the information and formed a clinical diagnosis and treatment plan." *Affidavit of Anthony Khoury, D.O.*, ¶ 5, attached as *Exhibit D* to *Motion for Summary Judgment* ("*Koury Affidavit*").  This treatment plan was conveyed to defendant Love for implementation. *Id*. at ¶ 6.

On June 27, 2012, plaintiff was transferred from the Muskingum County Jail to the Ohio Department of Rehabilitation and Corrections' Correctional Reception Center ("CRC"). *Plaintiff Depo.*, p. 75.  An examination of plaintiff on that date revealed, *inter alia*, that his throat was normal. *Exhibit 1*, p. 1, attached to *Plaintiff Depo.*

Thereafter, plaintiff was transferred to the Noble Correctional Institution ("NCI"). *Plaintiff Depo.*, pp. 75-76.  While at NCI, plaintiff had access to medical care and was examined by physicians and nurses. *Id*. at 76-78.  Plaintiff did not ask for treatment for his throat. *Id*. at 82.

On January 11, 2013, plaintiff, proceeding without the assistance of counsel, initiated this action under 42 U.S.C. § 1983. *Complaint*, Doc. No. 4.  On June 4, 2013, plaintiff amended his complaint, naming various defendants, including the Medical Defendants, alleging civil rights violations "under the Fifth, Eighth, and Fourteenth Amendment[s]" to the United States Constitution for "refusing [plaintiff] medical care." *Amended Complaint*, p. 5.

On August 29, 2013, plaintiff was transferred to the FMC. *Id*. at 75-76, 79-82.  According to plaintiff, he simply asked to be transferred to the FMC; there was no medical reason why he left NCI. *Id*. at 76, 79-81.  While at the FMC, plaintiff has talked to a

4

physician about pain in his throat and difficulty swallowing. *Id*. at 81. However, no physician has ordered any diagnostic tests, x-rays or other studies of his throat. *Id*. at 81-82.

The Medical Defendants move for summary judgment on plaintiff's claims against them, which plaintiff opposes. *Plaintiff [sic] Motion to Dismiss Defendant's [sic] Motion for Summary Judgement [sic]*, Doc. No. 72 ("*Memo. in Opp.*"). With the filing of the *Reply in Support of Motion for Summary Judgment of Defendants Shane Love, L.P.N. and Anthony Khoury, D.O.*, Doc. No. 75 ("*Reply*"), this matter is ripe for review.

## II. STANDARD

The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson,* 477 U.S. at 251.

The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Catrett,* 477 U.S. at 323. Once the moving party has met its initial burden, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250 (quoting former Fed. R. Civ. P. 56(e)); *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir. 1995)("nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial"). "Once the burden of production has so shifted, the party opposing summary judgment cannot rest on the pleadings or merely reassert the previous allegations. It is not sufficient to 'simply show that there is some metaphysical doubt as to the material facts.'" *Glover v. Speedway Super Am. LLC,* 284 F.Supp.2d 858, 862 (S.D. Ohio 2003)(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Instead, the non-moving party must support the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."

*Glover,* 284 F. Supp. 2d at 862 (citing *InteRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989)). Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Id.* *See also* Fed. R. Civ. P. 56(c)(3).

**III. ANALYSIS**

Plaintiff alleges that the Medical Defendants denied him medical treatment in violation of his constitutional rights. *Amended Complaint*, p. 5. The Eighth Amendment[3] prohibits cruel and unusual punishment. To prevail on his claims against the Medical Defendants, plaintiff must prove that the defendant acted with "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). This standard includes both an objective and a subjective component. The Court will address each in turn.

**A. Objective Component**

The objective component requires that a plaintiff establish a

---

[3] Plaintiff may have been a pretrial detainee during some or all of the relevant time. *See*, *e.g.*, *Amended Complaint*, pp. 5-6; *Love Affidavit*, ¶¶ 9-20. A claim of deliberate indifference to the serious medical needs of a pretrial detainee arises under the Due Process Clause of the Fourteenth Amendment. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). However, the standard governing such claims is the same as that arising under the Eighth Amendment. *Border v. Trumbull County Bd. of Comm'rs*, 414 Fed. Appx. 831, 835 (6th Cir. 2011) ("It is well-established that the Eighth Amendment's prohibition of cruel and unusual punishment provides the basis to assert a claim, under 42 U.S.C. § 1983, of deliberate indifference to a prisoner's serious medical needs; a similar claim brought on behalf of a pretrial detainee is equally viable under the Due Process Clause of the Fourteenth Amendment.) (citing *Phillips v. Roane County, Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008)).

"sufficiently serious" medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In this case, the Medical Defendants argue that plaintiff's allegations that he suffers from a prolonged sore throat from choking on an apple stem in a dessert is a relatively minor medical need that fails to establish the objective component of his claim. *Motion for Summary Judgment*, pp. 5-7. This Court agrees. A medical need is "sufficiently serious" when it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention[.]'" *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (internal quotation marks omitted). However, when a plaintiff bases a claim on "'the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious,'" *id*. (quoting *Blackmore v. Kalamazoo Cnty*., 390 F.3d 890, 898 (6th Cir. 2004)), "the plaintiff must 'place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment[.]'" *Id*. (quoting *Napier v. Madison Cnty*., 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted)). Plaintiff therefore bears the burden of establishing that his medical need is "sufficiently serious." *Santiago*, 734 F.3d at 590.

Here, plaintiff has offered no "verifying medical evidence" establishing a detrimental effect of any alleged failure to provide medical treatment. As an initial matter, the medical record does not establish a serious medical need. As recounted *supra*, plaintiff's testimony and medical records establish that plaintiff advised

defendant Love that he was "OK" and voiced no complaints to the second shift nurse following the choking incident on March 9, 2012. *Love Affidavit*, ¶¶ 11, 14; *Exhibit 2*, attached thereto. During a March 16, 2012 examination, defendant Love could find no areas of bleeding and plaintiff reported that his throat was doing better. *Love Affidavit*, ¶¶ 17-18; *Exhibits 2* and *3*, attached thereto. Subsequent examination revealed no abnormalities and plaintiff sought no treatment for his throat while incarcerated at NCI. *Plaintiff Depo.*, pp. 75-78, 82; *Exhibit 1*, attached thereto.

Moreover, plaintiff has not offered any evidence from a medical professional establishing any detrimental effect of an alleged delay in medical treatment. Instead, plaintiff argues that the Medical Defendants did not "give a clear and proper examination of" his throat; that they denied physician visits; that there was pain and constant bleeding for 85 days; and that "none of these facts were recorded by the defendant's, [sic] to protect their interest from a pending claims [sic]." *Memo. in Opp.*, p. 2 (citing to "the records," which the Court construes to be the 39-page handwritten diary or log attached thereto). These arguments fail for several reasons. First, these factual assertions and the handwritten log attached to the *Memo. in Opp.* are neither sworn nor made under penalty of perjury. *Id*. Under Rule 56, a party must support factual assertions with admissible evidence. Fed. R. Civ. P. 56(c), (e). Plaintiff's *pro se* status does not relieve him of this obligation. *See Viergutz v. Lucent Techs*., No. 08-3626, 375 Fed. Appx. 482, at *485 (6th Cir. April 23, 2010). *See also Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051,

9

at \*6-7 (6th Cir. May 5, 2010) ("The liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law . . . and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage[.]") (internal citations omitted); *United States v. Brown*, 7 Fed. Appx. 353, at \*354 (6th Cir. Mar. 19, 2001) (affirming grant of summary judgment where, *inter alia*, *pro se* litigant offered relevant factual allegations, but "did not file an affidavit to this effect nor did he sign any pleading under penalty of perjury"). Therefore, the Court cannot consider plaintiff's unsworn assertions in opposing the *Motion for Summary Judgment*. See *id*. See also *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010) ("'[A] court may not consider unsworn statements when ruling on a motion for summary judgment.'") (quoting *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991)).

In addition, even if these allegations had been sworn, they do not qualify as "verifying medical evidence." Plaintiff admits that he has no medical training and no education in any healthcare field. *Plaintiff Depo.*, pp. 8, 64. Finally, to the extent that plaintiff now suggests that certain "facts" are not reflected in the medical records, plaintiff previously testified that he did not believe that defendant Shane would lie, *i.e.*, falsify the medical records. *Id*. at 31-32, 43, 69.

In contrast, the Medical Defendants offer verifying medical evidence in support of the *Motion for Summary Judgment*. Defendant Love discussed his findings with defendant Khoury every time he

10

examined plaintiff. *Love Affidavit*, ¶ 21. Upon receiving these updates from defendant Love, defendant Khoury assessed the information and formed a clinical diagnosis and treatment plan, which he conveyed to defendant Love for implementation. *Khoury Affidavit*, ¶¶ 5-6. Defendant Love avers that he followed all treatment recommendations and orders given by defendant Khoury. *Id*. at ¶ 21.

The Medical Defendants also offer the affidavit of Stephen Payne, M.D., a medical doctor licensed to practice medicine in the state of Ohio. *Affidavit of Stephen Payne, M.D.*, ¶ 2, attached as *Exhibit C* to the *Motion for Summary Judgment* ("*Payne Affidavit*"). Dr. Payne reviewed plaintiff's medical records from Muskingum County Jail and NCI and plaintiff's deposition transcript. *Id*. at ¶ 3. Based on his education, training, experience and review of the record in this case, Dr. Payne opines, to a reasonable degree of medical probability, that plaintiff fainted after choking while swallowing food. *Id*. at ¶ 4. According to Dr. Payne, plaintiff did not sustain a serious injury and plaintiff was not a candidate for radiologic testing. *Id*. at ¶¶ 5-6. Based on his education, training, experience and review of the record in this case, Dr. Payne further opines, to a reasonable degree of medical probability, that the Medical Defendants met the applicable standards of care. *Id*. at ¶¶ 8-9. *See also Khoury Affidavit*, ¶ 11; *Love Affidavit*, ¶ 23 (both concurring to a reasonable degree of medical probability that the Medical Defendants met all applicable standard of care). Similarly, Dr. Payne avers, to reasonable degree of medical probability, that nothing the Medical Defendants did, or failed to do, caused any injury to plaintiff. *Payne Affidavit*, ¶¶ 10-

11

11. Based on this record, plaintiff has failed to meet the objective prong of his claim.

### B. Subjective Component

Even if plaintiff could satisfy the objective component of this analysis, he has not satisfied the subjective component. The subjective component requires that a plaintiff "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837). Although officials may not deliberately disregard a medical need, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Nevertheless, "a plaintiff need not show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'" *Comstock*, 273 F.3d at 703 (quoting *Farmer*, 511 U.S. at 835). "Instead, 'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Id.* (quoting *Farmer*, 511 U.S. at 836). Liability can result if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Here, plaintiff argues that the Medical Defendants failed to properly examine his throat and that he was repeatedly denied care by

12

a physician. *Memo. in Opp.*, p. 2. However, these unsubstantiated allegations fall short of demonstrating that the Medical Defendants "subjectively perceived facts from which to infer substantial risk to the prisoner, that [they] did in fact draw the inference, and that [they] then disregarded that risk." *Comstock*, 273 F.3d at 703. As recounted above, defendant Love examined plaintiff on the day that plaintiff choked and again within the week in response to plaintiff's written "Request for Medical Treatment." After the first examination, defendant Love also instructed the second shift nurse to assess plaintiff. Following each examination, defendant Love reported his findings to defendant Khoury. Defendant Khoury assessed the information, formed a diagnosis and developed a treatment plan, which was implemented by defendant Love. Far from establishing deliberate indifference, the uncontroverted affidavits of the Medical Defendants and Dr. Payne establish that the Medical Defendants properly responded and cared for plaintiff's throat.

Indeed, plaintiff does not criticize the medical assistance that has been administered. *Plaintiff Depo.*, p. 40. Instead, plaintiff simply believes that he should have been provided with additional medical attention, including diagnostic testing and x-rays. *Id*. at 40-41, 55-56, 97-98. However, "[w]here the plaintiff has received some medical treatment, 'federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Accordingly, plaintiff's belief that he should have received

13

more testing amounts to nothing more than a difference of opinion, which is not actionable under the Constitution.  In short, the Court concludes that plaintiff, having failed to satisfy either prong of his claim for deliberated indifference, has not established a constitutional violation on the part of the Medical Defendants.

    **WHEREUPON**, it is **RECOMMENDED** the *Motion for Summary Judgment of Defendants Shane Love, L.P.N. and Anthony Khoury, D.O.*, Doc. No. 66, be **GRANTED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation.* See *Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

May 5, 2014                                              *s/Norah McCann King*
                                                             Norah M$^c$Cann King
                                                     United States Magistrate Judge